**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

GERALD D. FULLER                                 :

    Plaintiff                                        :

    v                                                :            Civil Action No. WMN-05-2333

WASHINGTON COUNTY HOSPITAL, *et al*.  :

    Defendants                                       :
                                  o0o

<u>**MEMORANDUM**</u>

    The above-captioned civil rights action, filed on August 23, 2005, alleges Plaintiff was subject to an illegal search and seizure when he was required to submit to a urine test by Defendants.  Papers No. 1 and 12.  Plaintiff has filed a Motion for Summary Judgment.  Paper No. 27.  Defendant Washington County Hospital has filed a cross-motion and opposes Plaintiff's motion for summary judgment.  Paper No. 31.  Division of Corrections Defendants Sowers and Martin have also filed a Motion to Dismiss or for Summary Judgment.  Paper No. 43.  Upon review of the papers filed, the court finds a hearing in this matter to be unnecessary.  Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's motion for summary judgment will be denied and Defendants' motions, construed as motions for summary judgment, shall be granted.

<u>Background</u>

    Plaintiff claims that on August 2, 2005, while incarcerated at Roxbury Correctional Institution (RCI), he collapsed in his housing unit.  Paper No. 12 at p. 1.  Plaintiff was transported to the prison infirmary where he was given Narcan[1] in an attempt to revive him.  *Id.*

---

[1] Narcan is an injection used to reverse the effects of opioids.  *See* Physicians Desk Reference, 58th Ed., 2004, p. 1241.

When he remained unresponsive, the attending doctor attempted to insert an oxygen tube down his throat, which caused Plaintiff to regain consciousness. *Id*. Plaintiff was then transported to Washington County Hospital where he was examined by a nurse and admitted for 24 hours of observation. *Id*. at p. 2. Plaintiff claims that neither the nurse nor the doctor who examined him ordered a blood test or a urinalysis. *Id*.

Plaintiff asserts that he was first asked for a urine sample by a man whom he thought was an officer from RCI. *Id*. In response to the request, Plaintiff asked if a warrant had been issued, and he was told that no warrant was needed because he is an inmate. *Id*. at pp. 2– 3. Plaintiff was later asked to provide a urine sample by another man whom he also describes as a Division of Correction employee. *Id*. at p. 3. Plaintiff claims that he was told if he did not provide the urine sample it would be collected via use of a catheter. *Id*. Plaintiff asked for an opportunity to consult with an attorney regarding the necessity of a warrant and his request was denied. *Id*. Plaintiff awoke from a period of unconsciousness to discover the same man attempting to insert a catheter into his penis. The catheter was dropped on the floor before it could be inserted. *Id*. While the catheter was being retrieved, Plaintiff placed his hands over his penis so it could not be inserted. *Id*. A struggle ensued and ended when Plaintiff again lost consciousness, permitting the insertion of the catheter. *Id*.

The urine sample collected without Plaintiff's consent was subjected to testing and as a result Plaintiff was charged of violating prison disciplinary rules prohibiting the use of intoxicants. *Id*. at p. 4. In addition, Plaintiff claims that he was injured as a result of the violent nature of the catheter insertion. *Id*. He alleges he now suffers from frequent urinary tract infections and is required to sit or kneel down when urinating because the stream of urine is

likely to spray. *Id.*

Plaintiff alleges that the forcible use of a catheter and collection of a urine sample without his consent or a warrant violated: his Fourth Amendment right to be free from unreasonable search and seizure; his Sixth Amendment right to counsel; and his Fourteenth Amendment right to due process. *Id.* at pp. 6– 8. He seeks expungement of prison disciplinary proceedings, imposed as a result of the incident, as well as declaratory and monetary relief. *Id.* at pp. 7–9.

Defendants assert that Plaintiff was transported to Washington County Hospital on an emergency basis for a suspected drug overdose. A urinalysis was ordered by the attending physician, performed by medical staff, and revealed that Plaintiff was suffering from a heroin overdose. Paper No. 36 at Ex. 2. The results of that report were sent to prison officials pursuant to two releases signed by Plaintiff. *Id.* at Ex. 5 and 6.   Upon his return to prison, Plaintiff was charged with violation of prison disciplinary rules prohibiting the use of illegal drugs.[2] Paper No. 43 at Ex. 8 and 9. At the adjustment hearing, Plaintiff entered a plea of guilty to use of a controlled dangerous substance and was confined to segregation for a period of 150 days and indefinite suspension of visiting privileges. *Id.* at Ex. 9, p. 2.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.

---

[2] Plaintiff was charged with violating Rule 111: "Inmates are prohibited from the use, consumption, or possession of a medication or substance (excluding alcohol) which reasonably could be used as an intoxicant;" and Rule 112: "Inmates are prohibited from the use, consumption, or possession of a controlled dangerous substance (as defined in Article 27, Section 277, ACM) drug, or counterfeit drug or controlled dangerous substance." Paper No. 43 at Ex. 10. Plaintiff pled guilty to violation of Rule 112. *Id.* at Ex. 9.

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979)؛   *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear
> the burden of proof at trial on a dispositive issue, a summary
> judgment motion may properly be made in reliance solely on the
> "pleadings, depositions, answers to interrogatories, and admissions
> on file."  Such a motion, whether or not accompanied by affidavits,
> will be "made and supported as provided in this rule," and Rule
> 56(e) therefore requires the nonmoving party to go beyond the
> pleadings and by her own affidavits, or by the "depositions,

> answers to interrogatories, and admissions on file," designate
> "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

<u>Analysis</u>

<u>Washington County Hospital</u>

Plaintiff's claim against Washington County Hospital turns on the fact that while he was under the care of its personnel, he was forced to provide a urine sample later used against him in a prison disciplinary proceeding.[3]  First, Washington County Hospital is not a state actor.  *See Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir.1993).  Even if state action could be attributed to the Hospital, however, Plaintiff's claim fails because it is based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*.  The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in civil rights claims filed pursuant to 42 U.S.C. § 1983. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774

---

[3] Plaintiff's assertion that a urinalysis test was conducted for the sole purpose of incriminating him is specious.  The undisputed facts are that Plaintiff was unconscious and required emergency medical treatment.  Had medical personnel failed to conduct tests to determine the cause of his unconsciousness, his claims against Washington County Hospital staff would have undoubtedly included a claim for medical malpractice.

F.Supp. 986, 990 (E.D.Va. 1991).

To the extent that Plaintiff asserts a claim that his right of privacy in his medical records was violated by Washington County Hospital when the results of his urinalysis test were provided to the Division of Correction, that claim also fails.  Plaintiff signed two release forms authorizing the release of medical information.  Paper No. 36 at Ex. 5 and 6.  The only basis for damages with respect to the alleged unauthorized disclosure is the sanctions imposed on Plaintiff through prison disciplinary proceedings.  As a private actor, Washington County Hospital was under no obligation to insure that Plaintiff's asserted constitutional rights were not abridged in the disciplinary process.

<u>Correctional Defendants</u>

Plaintiff's claim with respect to Defendants Sowers and Martin rests largely on allegations that Division of Correction Directives were not observed when a catheter was used to collect a urine sample.  Records submitted from the hospital clearly indicate: that a urinalysis was ordered for medical purposes; that Plaintiff was asked several times to provide a urine sample for that purpose but claimed he could not do so; and disclosure of the results was authorized.  Paper No. 36 at Ex. 2– 6.  To the extent that directives were not followed, that failure alone is not a basis for a finding of a constitutional violation where, as here, the directives cited are not constitutionally mandated.[4]

The Fourth Amendment protects against unreasonable searches and seizures conducted by a governmental agency.  Where, as here, the person searched is a prisoner, the privacy interest

---

[4] Plaintiff asserts that a test to determine if he had used an illegal substance could have been performed when he returned to the prison where the procedures in place for collection and testing could have been observed.  As observed with respect to the medical defendants, however, the urinalysis was medically necessary.  The fact that a test could have been performed later is without legal consequence.

is limited and does not take precedence over legitimate governmental goals. *See Hudson v. Palmer*, 468 U.S. 517, 528 (1984) (random searches of prison cells are constitutionally permitted); *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987) (warrantless searches do not violate Fourth Amendment where government interest is to insure probation restrictions are observed). Random urinalysis testing of inmates is not prohibited by the Fourth Amendment in light of the legitimate penological objective to insure illegal drugs are not being used. Furthermore, urinalysis does not constitute an unreasonable search under the Fourth and Fourteenth Amendments. *See Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986); *Storms v. Coughlin*, 600 F. Supp. 1214, 1221 (S.D. N.Y. 1984). Moreover, management of prisons is left to the expertise of those in charged with the difficult task of overseeing the daily operations of the facilities. It is not the role of the courts to determine prison security matters, and the exclusionary rule does not apply to prison disciplinary proceedings.

Other than Plaintiff's bald assertion to the contrary, there is no evidence that a conspiracy existed among Defendants to violate his constitutional rights. Rather it is clear from the records submitted that Plaintiff's heroin overdose caused him to lose consciousness, he was provided immediate emergency medical care, and he was subsequently charged with a violation of prison disciplinary rules to which he pled guilty. Indeed, there is no attempt in any of the numerous pleadings filed by Plaintiff to deny that he actually violated the prison disciplinary rule prohibiting the use of heroin or other illegal drugs,[5] nor is there any attempt by Plaintiff to refute

---

[5] Plaintiff now asserts that the administration of Narcan could have caused a false positive test result. That assertion, however, was never raised by Plaintiff at his prison disciplinary hearing.

Defendants' position that a urinalysis was medically indicated by his condition.

Certain procedural due process rights are guaranteed an inmate during a prison disciplinary hearing because revocation of good conduct credits represent a deprivation of a protected liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id*. at 556 *citing Morrisey v. Brewer*, 408 U.S. 471, 488 (1974)  Revocation of good conduct credits did not take place in the instant case. Paper No. 43 at Ex. 9 at p. 2. The only liberty interests at issue here, the loss of Plaintiff's status as a general population inmate and loss of visitation, are tenuous at best.

The touchstone for determining whether or not a particular housing assignment within the prison invokes a liberty interest has been explained by the Supreme Court. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483– 84 (1995). In *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), this standard was applied to allegations that confinement to administrative segregation for six months in "cells [that] were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above." The court held that those conditions did not implicate a liberty interest because they did not represent a significant hardship. *Id*. Given this analysis, it is easy to conclude that

Plaintiff's confinement to disciplinary segregation for 150 days and loss of visitation[6] was not a significant hardship implicating a protected liberty interest.

The medical administration of a catheter to determine the cause of Plaintiff's sudden unconsciousness and the subsequent disclosure of the urinalysis test results did not violate Plaintiff's constitutional rights and he is not entitled to the relief sought in his Complaint. Accordingly, Defendants' Motions for Summary Judgment will, by separate order, be granted and Plaintiff's Motion for Summary Judgment will be denied.

/s/

May 23, 2006                          _____
Date                                          William M. Nickerson
                                              Senior United States District Judge

---

[6]  A permanent ban, however, may change the analysis. *See White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) (prisoners and their visitors do not have a constitutional right to prison visitation but a permanent ban may implicate the Eighth Amendment).